**Beckloff v. Patel**

C.P. of Lawrence County, no. 10664 of 1995, C.A.

*John E. Quinn* and *Jennifer E. Wright,* for plaintiffs.
*George M. Evan,* for defendant.

PRATT, *J.,* February 11, 1999—On September 3, 1994, at the Eldorado Motel in Shenango Township, Lawrence County, Pennsylvania, plaintiff Thomas E. Beckloff was injured when assaulted early in the morning by an unidentified person while staying with his plaintiff wife at the defendant motel as a guest. After a jury trial of this case, the jury, on January 7, 1998, entered a verdict in favor of the defendant. The plaintiffs timely filed a motion for post-trial relief, which was denied by the court on December 23, 1998. This opinion is issued in support of this order.

## DISCUSSION

In their motion for post-trial relief, plaintiffs contend that the defendant's evidence was insufficient to warrant

an instruction to the jury regarding contributory negligence and/or was insufficient to support a verdict of contributory negligence. The plaintiffs request judgment n.o.v. or a new trial.

The court, in its final instructions to the jury, instructed the jury regarding the law on contributory negligence as it applied to plaintiff Thomas C. Beckloff as follows:

"There have been allegations in this case and evidence presented that the plaintiff, Thomas Beckloff, was contributorily negligent. That the plaintiff, Thomas Beckloff, had a choice on September 3, 1994, of proceeding one of two ways. One, which was perfectly safe, as alleged by the defendant, that is to stay in his room, and the other, which may have been a dangerous risk, and that the plaintiff, Thomas Beckloff, chose the dangerous way. The defendant has the burden of proving the existence of such negligence. You must, therefore, determine whether the plaintiff was negligent, in that, as an ordinarily prudent person, under all circumstances then present, the plaintiff, Thomas Beckloff, failed to exercise reasonable care for his own protection. If you find that plaintiff was negligent, you must then determine whether that negligent conduct was a substantial factor in bringing about plaintiff's injuries." Trial Transcript, January 5, 6 and 7, 1998, pp. 144-45.

In the verdict slip prepared for and submitted to the jury, the court included interrogatories for the jury's determination of whether, (1) defendant was negligent, (2) defendant's negligence was a substantial factor in causing Beckloff's injuries, (3) Beckloff was contributorily negligent, and (4) Beckloff's contributory negligence was a substantial factor in causing his injuries. The jury answered all four interrogatories in the affirmative.

The verdict slip also contained an interrogatory on comparative negligence, requesting the jury to apportion

the causal negligence between the parties. In response, the jury attributed 85 percent of the causal negligence to Beckloff and 15 percent to the defendant, resulting in a verdict for the defendant.

A defendant has the burden of proving a plaintiff's contributory negligence. *Hepler v. Hammond,* 363 Pa. 355, 69 A.2d 95 (1949); *McCullough v. Monroeville Home Association,* 270 Pa. Super. 428, 411 A.2d 794 (1979).

"However, if there is some evidence of contributory negligence produced in *any* of the evidence, whether offered by a plaintiff or defendant, it is reversible error not to charge the jury on the issue when requested to do so by the defendant. . . . [W]here there is *any* evidence which alone could justify an inference of a disputed fact, such dispute *must* go to the jury, no matter how strong or persuasive may be the countervailing proof. . . ." *McCullough, supra* at 431, 411 A.2d at 795. (citations omitted)

Even minimal evidence of contributory negligence requires a charge to the jury on the issue. *Karchner v. Flaim,* 661 A.2d 928, 931 (Pa. Commw. 1995). "No matter how slight the evidence of plaintiff's contributory negligence, it is reversible error not to charge the jury on the issue." *Id.* at 932. (citation omitted)

It is error, however, to submit the question of contributory negligence to the jury if no evidence was presented from which a jury could find contributory negligence. *Thomas v. Tomay,* 413 Pa. 270, 196 A.2d 740 (1964). "A jury should not be permitted to make a finding of material fact in the absence of evidence to support the finding." *Id.* at 273, 196 A.2d at 742.

In the instant case, there was ample evidence to support the court's instruction to the jury on the issue of contributory negligence. The testimony of Beckloff

established that, while staying as a guest in a room at the Eldorado Motel, he was awakened in the early morning hours by the sound of glass breaking. T.T., p. 41. He further testified that he dressed and opened his hotel room door to exit to investigate the noise. Seeing nothing, he returned to his room. T.T., pp. 41-42. Later, Beckloff then testified as follows:

"Q: After you went back into your room and went back to bed, were you awakened at any other time that evening?

"A: Approximately 20 or 25 minutes later.

"Q: And, again, do you recall the nature of the disturbance which awoke you?

"A: Basically, the same thing, a lot of hollering and glass breaking.

"Q: And what did you do upon being awakened for the second time?

"A: Got up out of the bed. I looked out the window again and saw absolutely nothing. Got dressed and opened up the inside door to the hotel room.

"Q: Okay. Now, I have to ask you, Mr. Beckloff, at the time that you placed your hand on the doorknob for the second time that evening, what did you intend to do?

"A: My intentions were to just make sure that there wasn't anything happening as far as my personal property out there, Gary's car, my car. I assumed that everything was the same as it was the first time, or somebody was just driving through the parking lot.

"Q: And you put your hand on the door and opened the door. What then occurred, Mr. Beckloff?

"A: As soon as I opened the door up I still didn't see a lot, but I started to take a small step out and

there was a gentleman standing with his back to the wall right next to my door.

"Q: When you say right next to you, what direction do you mean?

"A: The door opens up to the right, and the man was standing immediately on the left side.

"Q: When you previously looked out your window, had you seen anyone in the parking lot?

"A: No.

"Q: What did you do when you noticed the man standing to the left of your doorway?

"A: At that point I had started to take one step out. And I still had a hold of the door, and the gentleman swung around. He had a beer bottle raised above his head to hit me.

"Q: And when you noticed that he was in that position which you just described for the jury, what did you decide to do at that point?

"A: The normal instinct, I reached out with my left hand and grabbed him right around the throat.

"Q: Describe to the jury what occurred after that occurred.

"A: Well, as I proceeded to go out the door I still had a hold of him, and I asked him what the hell was going on. The guy did not respond. I pushed him backwards. I got him over the hood of my car and with my right hand reached over and knocked the beer bottle out of his hand, which hit the ground on the other side of my automobile.

"Q: Now, Mr. Beckloff, to this point had you seen any other persons in the vicinity?

"A: No.

"Q: After you knocked the beer bottle out of his hand, what then occurred?

"A: I believe I asked him one more time what was going on. And at that point I was literally picked up from this guy and I was thrown approximately eight feet and hit the front wall of the building.

"Q: And when you say you hit the front wall, where would that have been in relation to the door of your room?

"A: It would have been to the right of my room. Standing in my room it would have been right underneath the picture window.

"Q: Had you seen this gentleman approach you?

"A. No.

"Q: After you fell from hitting the wall, what then occurred?

"A: The man took a swing at me and hit me one time in the side of the face. He proceeded to tell me that this man won't choke anybody again.

"Q: Now, to this point you described two individuals for us. I would like you to describe the appearance of the first man which you saw standing to the left of your doorway.

"A: The first man was approximately 6 foot, 6 foot 1, somewhere in that vicinity. Probably 180, 190 pounds.

"Q: What was the appearance of the second gentleman that ended up striking you?

"A: That man was approximately my height and probably outweighed me by 70 pounds, which makes him in the vicinity of 320 pounds.

"Q: What is your height, Mr. Beckloff?

"A: 6'5.

"Q: After that man struck you in the face, what then occurred, if anything?

"A: There was a third individual there. My glasses were laying on the ground—and this individual really

didn't get involved in the problems that were occurring—he did walk over and kick my glasses out of the way. And at that point I just hollered for somebody to get a gun and get these guys out of here." T.T., pp. 42-46.

From this testimony, the jury could find, directly or by inference, that Beckloff's involvement in the incident was not that of an innocent bystander or victim in protecting himself but, to the contrary, that he was an instigator in causing the violence that occurred, which resulted in his injuries.

Defendant Jitendra Patel, the owner of the Eldorado Motel, also testified and portions of his testimony corroborate some of Beckloff's testimony. Patel confirmed that there were two disturbances in the parking lot during the evening in question and, during the second disturbance, he observed an individual exit a car and approach the door to Room 104, the room which Beckloff and his wife were occupying. T.T., p. 108. Patel stated that he asked the individual to leave, whereupon the individual began backing away until Beckloff opened his motel room door. When this occurred, the individual ran toward Beckloff holding a beer bottle, and Beckloff grabbed him by the throat and the fighting ensued. T.T., pp. 109-110.

The testimony of witness Carlyn Tollett confirmed the testimony of Patel. Tollett was also a guest at the Eldorado Motel on the night in question, staying in the room next to the plaintiffs. She testified that she was awakened twice in the early morning hours; the second time, she looked out her window and saw a man leaning against a car. T.T., pp. 4-5. She stated that the man then began to run at the same time she heard the door of Beckloff's room rattling. T.T., pp. 6, 15, 16.

The testimony presented by both sides clearly represents sufficient evidence to raise the issue for the jury of whether Beckloff exercised the degree of care a reasonable person would exercise under these circumstances by exiting his hotel room and becoming involved in the commotion or altercation that was in progress in the parking lot of the Eldorado Motel. It was within the province of the jury to determine whether Beckloff's conduct was reasonable or unreasonable in light of the circumstances and whether his conduct amounted to negligence and was a substantial factor in causing his own injuries. The testimony relevant to Beckloff's possible contributory negligence was more than a mere scintilla; there was substantial testimony from three witnesses, Beckloff, Patel and Tollett, from which the jury could find Beckloff contributorily negligent.

The court concludes, therefore, that it was proper for the court to instruct the jury on contributory negligence. More pointedly, it would have been reversible error if the court failed to give an instruction on contributory negligence.

Additionally, the testimony as described above from the three witnesses was more than sufficient to support the jury's finding that Beckloff was contributorily negligent and that it was this negligent conduct which caused Beckloff's injuries, and the jury's verdict for Patel.

Accordingly, plaintiff's motion for post-trial relief must be denied.

## ORDER

The court directs the prothonotary to file the attached opinion and serve a copy thereof upon counsel of record.